IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CONNIE BARBER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:09-CV-60 |
| | § | |
| DOLGENCORP OF TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The following are pending before the court:

1.  Defendant's motion for summary judgment and brief in support (docket entry #24);

2.  Plaintiff's response to Defendant's motion for summary judgment (docket entry #28);

3.  Defendant's objections to Plaintiff's summary judgment evidence (docket entry #33)[1]; and

4.  Defendant's reply to Plaintiff's response to Defendant's motion for summary judgment (docket entry #34).

Having considered the Defendant's motion for summary judgment and the responsive briefing thereto, the court finds that the motion should be granted in part.

PROCEDURAL HISTORY

On February 5, 2009, the Plaintiff filed her original complaint and her first amended original complaint against the Defendant. On November 17, 2009, the Defendant filed its motion for

---

[1]The court has reviewed the Defendant's objections to the Plaintiff's summary judgment evidence. The court has only considered appropriate summary judgment evidence in reaching its decision.

summary judgment. On April 16, 2010, the Defendant filed its motion for leave to file a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) subject to its pending motion for summary judgment (docket entry #54). On April 19, 2010, the court denied the Defendant's motion for leave to file its FED. R. CIV. P. 12(c) motion for judgment on the pleadings and stayed the case. The court stayed the case because it appeared to the court that the Texas Supreme Court's resolution of *Texas Mut. Ins. Co. v. Ruttiger*, No. 08-0751 would be dispositive of the issues before the court in the instant case.

Since the Texas Supreme Court had not yet ruled on the *Ruttiger* case, this court denied the Defendant's motion for summary judgment as premature on September 29, 2010. The parties were advised, however, that the Defendant could petition the court to reinstate its motion for summary judgment once the Texas Supreme Court issued its opinion in *Ruttiger*.

On August 26, 2011, the Texas Supreme Court issued its decision in *Ruttiger*. On September 7, 2011, the Defendant notified the court of the *Ruttiger* decision and moved the court to dismiss the Plaintiff's case based on the same. The Plaintiff filed a response in opposition thereto. The Defendant's motion for summary judgment is now ripe for the court's consideration.

## FACTUAL BACKGROUND

The Plaintiff was employed by Defendant as a manager of a Dollar General store in Plano, Texas. On Friday, November 2, 2007, the Plaintiff was robbed at gunpoint while working at Dollar General. The Plaintiff immediately reported the robbery to Dollar General's Employee Response Center. The Employee Response Center then notified the Risk Management Department of the robbery. On Tuesday, November 6, 2007, the Risk Management Department prepared a claim file and assigned Ruth Gregory ("Gregory") as the adjuster. Gregory is employed as a licensed adjuster

in the Defendant's Risk Management Department. Gregory assists the Defendant in processing workers' compensation claims filed by employees of Dollar General.

On Wednesday, November 7, 2007, Gregory telephoned the Plaintiff to make a preliminary assessment of whether the Plaintiff sustained any adverse effects from the robbery. Although Gregory was unable to reach the Plaintiff on that date, Gregory left a voice mail message on the Plaintiff's personal telephone, advising the Plaintiff that the Plaintiff would soon be receiving a telephone call from Dr. Robert De la Torre, a licensed psychologist located in Nashville, Tennessee.

On Wednesday, November 7, 2007, Dr. De la Torre contacted the Plaintiff via telephone. After interviewing the Plaintiff, Dr. De la Torre completed a "Critical Incident Response Team (CIRT)/Critical Incident Debriefing" form, making the following clinical assessment and recommendations:

> Ms. Barber stated that she has never before been involved in a robbery. She was able to recount the incident in a manner that was logical and goal-directed. Affect was tearful at times and generally appropriate to the situation, and mood was characterized as depressed. Ms. Barber discussed her thoughts and feelings about the event, admitting that her first instinct was to tackle the robber. She recalled her struggles to remain calm while trying to find the correct key to open the office. The gravity of the situation did not hit her until she was talking with police: "I almost passed out." Since the incident, Ms. Barber has been experiencing insomnia, intrusive memories, decreased appetite, exaggerated startling, hypervigilance, crying spells, concentration problems, and panic episodes marked by shortness of breath. She has been preoccupied with fears that the robber may return, and is aware that her blood pressure has been elevated. She has seen no improvement in her reactions over the past few days. Information about stress, stress management, and trauma was provided to help Ms. Barber normalize her reactions and to help her recognize other typical symptoms of acute stress should or as they occur. She indicated that she has been concerned about her husband, who underwent open-heart surgery recently and has been worried about her. Additionally, she noted that her difficulties have been further exacerbated by the recent death of a good friend.

On Thursday, November 8, 2007, Gregory received Dr. De la Torre's critical incident report.

Gregory noticed that Dr. De la Torre recommended that the Plaintiff be referred to one of two therapists who treated trauma patients. Gregory contacted the therapists on November 8 and 9, 2007 but was advised that neither therapist accepted workers' compensation patients. On Friday, November 9, 2007, Gregory contacted the Plaintiff and advised the Plaintiff that since the recommended therapists did not accept workers' compensation patients, the Plaintiff would need to secure the services of a primary care physician to direct her care.

Meanwhile, the Plaintiff returned to work on Saturday, November 3, 2007 without incident. The Plaintiff worked her regular schedule on Monday, November 5, 2007 through Thursday, November 8, 2007. On Friday, November 9, 2007, the Plaintiff appeared for her regularly scheduled shift. However, a co-worker accidentally startled the Plaintiff and the Plaintiff subsequently felt anxious. Although the Plaintiff completed her shift on November 9, 2007, she did not attempt to return to work until Monday, November 12, 2007. However, as the Plaintiff was driving to work on Monday, November 12, 2007, the Plaintiff felt like she was having a heart attack. The Plaintiff returned home, and her husband drove her to Presbyterian Hospital of Greenville.

According to the medical records from Presbyterian Hospital, the Plaintiff presented with chest pain and dizziness. The medical records indicate that the onset of the Plaintiff's chest pain coincided with the robbery. While the Plaintiff was diagnosed as suffering from anxiety, the medical records indicate that the Plaintiff had previously suffered a lacunar infarct in the anterior limb of the left internal capsule of her brain (a stroke). The Plaintiff was instructed not to return to work until released. The Plaintiff was further instructed to follow-up with her physician the following day.

On Thursday, November 15, 2007, the Plaintiff contacted Gregory, advising Gregory that she had sought treatment at the Presbyterian Hospital emergency room. According to Gregory, the

Plaintiff advised her that she had been diagnosed with a mild stroke. When questioned, the Plaintiff was unable to identify when and where she had suffered a stroke. According to Gregory, the Plaintiff did not advise her that she was suffering from anxiety. On the same date, Gregory contacted Presbyterian Hospital to obtain the Plaintiff's medical records. The hospital declined Gregory's request to release the Plaintiff's medical records since the Plaintiff had submitted the charges for her treatment under her group health insurance plan rather than as a workers' compensation claim. Gregory did not seek a medical release from the Plaintiff.

Thereafter, on the same day, Thursday, November 15, 2007, Gregory filed a Notice of Disputed Issue(s) and Refusal to Pay Benefits ("Notice") with the Texas Department of Insurance, Division of Workers' Compensation. The Notice provides, in pertinent part, as follows:

> We are disputing entitlement of medical benefits and Temporary Income Benefits because:
>
> > Claimant stated she went to the emergency room on November 12, 2007 and was diagnosed with having a mild stroke. Claimant was asked where and when the stroke occurred, the claimant stated she did not know.
> >
> > A compensable injury generally is an accidental injury which results from an untoward event traceable to a definite time, place, and cause. It appears the claimant is suffering from an ordinary disease of life. In the claimant's statement, she has undergone life changes, such as the death of a friend and her husband undergoing open heart surgery.
> >
> > The Carrier is denying any disability or impairment for non-occupational conditions.

Thereafter, the Plaintiff sought counsel to dispute the Defendant's denial of workers' compensation benefits. On March 24, 2008, the Texas Department of Insurance, Division of Workers' Compensation conducted a benefit review conference to mediate resolution of the disputed

issues. The Plaintiff and Defendant were unable to reach an agreement. A contested case hearing was held on April 22, 2008 concerning the following disputed issues:

1. Did the Plaintiff sustain a compensable mental trauma injury on or about November 2, 2007?

2. Does the Plaintiff have a disability resulting from an injury sustained on November 2, 2007, and if so, for what period(s)?

On April 25, 2008, the hearing officer with the Texas Department of Insurance, Division of Workers' Compensation issued his Decision and Order. In his Order, the hearing officer provided, in part, the following background information:

> . . . Carrier denied the injury claim, and Claimant has been unable to get counseling recommended by Dr. Delatorre. After her release from the hospital, Claimant saw Tena Patterson, M.D., a family practitioner, on November 19, 2007. Dr. Patterson diagnosed anxiety, depression and post traumatic stress disorder which she indicated was related to the robbery. Claimant has a referral from Dr. Patterson to a psychiatrist, but denial of the claim has prevented followup. Dr. Patterson indicated that Claimant is unable to work in a social setting because of her anxiety. Claimant has been seeing a licensed professional counselor at Crisis Center of North Texas, a crime victim's assistance center, beginning February 15, 2008, and her counselor, Katie Swafford, confirms the professional assessment of chronic post traumatic stress disorder following the robbery. The evidence was convincing that Claimant has sustained a compensable mental trauma injury, and that this condition has been disabling beginning November 10, 2007 and continuing through the date of hearing.

The hearing officer found that the Plaintiff sustained a mental trauma injury in the course and scope of her employment as a result of being robbed at work on November 2, 2007. The hearing officer further concluded that the Plaintiff had a disability due to her injury beginning November 10, 2007 and continuing through the date of the hearing. The hearing officer ordered the Defendant to pay benefits to the Plaintiff. The Defendant complied with the order of the hearing officer.

On February 5, 2009, the Plaintiff initiated suit against the Defendant. In her first amended original complaint, the Plaintiff alleged that she suffered damages because the Defendant delayed

paying the workers' compensation benefits due to her. In her first amended complaint, the Plaintiff alleged the following causes of action:

1. Violations of §§ 541.060(a)(2)(A), (a)(3), and (a)(7) of the Texas Insurance Code (unfair settlement practices);

2. Violations of § 541.061 of the Texas Insurance Code (misrepresentation);

3. Breach of the duty of good faith and fair dealing;

4. Punitive damages for bad faith; and

5. Violations of the Texas Deceptive Trade Practices Act.

### LEGAL STANDARD AND ANALYSIS

**1. Violations of § 541.060 of the Texas Insurance Code**

The Plaintiff asserts various violations of the Texas Insurance Code for unfair settlement practices. The Texas Supreme Court, however, "eliminated a workers' compensation claimant's ability to bring a cause of action under Texas Insurance Code § 541.060." *Thompson v. Zurich American Ins. Co.*, 664 F.3d 62, 64 n.1 (5th Cir. 2011), citing *Tex. Mut. Ins. Co. v. Ruttiger*, 54 Tex. S.Ct. J. 1642, __ S.W.3d __, __, 2011 WL 3796353, at *6-12 (Tex. Aug. 26, 2011). Accordingly, the Defendant's motion for summary judgment with respect to the Plaintiff's Texas Insurance Code § 541.060 violations is granted.[2]

**2. Violations of § 541.061 of the Texas Insurance Code**

The Texas Insurance Code provides as follows:

---

[2]The court notes that counsel for the Plaintiff in this case represented the Plaintiff in the *Thompson* case as well. Oddly, however, while counsel conceded at oral argument at the Fifth Circuit in the *Thompson* case that the *Ruttiger* decision eliminated a workers' compensation claimant's ability to bring a cause of action under § 541.060 of the Texas Insurance Code, counsel did not make the same concession in the instant case.

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:
>
> (1) making an untrue statement of material fact;
>
> (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
> (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; . . .

TEX. INS. CODE § 541.061. Subsequent to the *Ruttiger* decision, the Plaintiff persists in her claim that the Defendant violated the above-referenced sections of the Texas Insurance Code. The court has reviewed the summary judgment record and is of the opinion that the Plaintiff, however, did not brief the issue of misrepresentation under the Texas Insurance Code. Accordingly, the court finds that the Plaintiff has abandoned her misrepresentation claim under the Texas Insurance Code. *See Thompson*, 664 F.3d at 64 n.1. The Defendant's motion for summary judgment with respect to the Plaintiff's Texas Insurance Code § 541.061 violations is granted.

### 3. Violations of the Texas Deceptive Trade Practices Act

The Plaintiff has also asserted violations of the Texas Deceptive Trade Practices Act. However, since the court has concluded that the Plaintiff cannot recover on her Texas Insurance Code claims, the court likewise holds that the Plaintiff cannot recover on her Texas Deceptive Trade Practices Act claims which are premised on the Texas Insurance Code violations. *See Thompson*, 664 F.3d at 64 n.1. Accordingly, the Defendant's motion for summary judgment with respect to the Plaintiff's Texas Deceptive Trade Practices Act violations is granted.

### 4. Breach of the duty of good faith and fair dealing

The Plaintiff's medical benefits have been paid; accordingly, the only issue remaining before

the court is whether the Defendant complied with its duty of good faith and fair dealing in resolving the Plaintiff's claim. *See Thompson*, 664 F.3d at 66. "Under Texas law, insurers have long had a duty to deal fairly and in good faith with an insured in processing and paying claims." *Id.*, citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 212-13 (Tex. 1988); *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Although the recent *Ruttiger* decision "casts doubt on a claimant's future ability to bring a claim against a workers' compensation insurance carrier based on a breach of the common law duty of good faith and fair dealing," at this time, such a cause of action remains viable. *See Thompson*, 664 F.3d at 66 n.2.

"To avoid liability for denying or delaying a claim, an insurer must establish a bona fide controversy with a reasonable basis for denial or delay, 'even if that basis is eventually determined . . . to be erroneous.'" *Thompson*, 664 F.3d at 66 (citations omitted). "*Aranda* created a two-prong basis for establishing a bad faith claim." *Id.* at 66 n.3. "The insured must establish first 'the absence of a reasonable basis for denying or delaying payment of the benefits of the policy'; and second, 'that the carrier knew or should have known that there was not a reasonable basis for denying or delaying payment of the claim.'" *Id.* (citation omitted). "Whether an insurer has a reasonable basis for a denial is to be judged according to the facts before the insurer at the time." *England v. Liberty Mut. Ins. Co.*, __ F.Supp.2d __, 2011 WL 5873002, *8 (S.D. Tex. 2011) (citation omitted).

"Within the insurer's duty to deal fairly and in good faith falls the obligation to 'reasonably investigate a claim.'" *Id.* at *9 (citation omitted). "[I]f a full, unbiased investigation would have made coverage reasonably clear, the insurer cannot avoid bad faith liability by conducting an outcome determinative investigation." *Id.* (citation omitted).

The Defendant herein argues that summary judgment is appropriate based on the following:

1. The Defendant did not deny compensation for the Plaintiff's mental trauma injury; rather, the Defendant contends that it denied workers' compensation coverage for the Plaintiff's mild stroke;

2. A bona fide dispute existed as to the compensability and extent of the Plaintiff's injury based on the following;

    A. The Plaintiff returned to work after the robbery;

    B. The Plaintiff admitted that other events contributed to the trauma; and

    C. The Plaintiff failed to follow the Defendant's instructions, *i.e.*, the Plaintiff needed to obtain a primary care physician; and

3. At the time of the alleged breach of the duty of good faith and fair dealing, liability for the Plaintiff's mental trauma injury was not reasonably clear.

In response, the Plaintiff contends that due to Gregory's failure to reasonably investigate the Plaintiff's claim, the Defendant denied the Plaintiff's workers' compensation claim in its entirety. Specifically, the Plaintiff claims that Gregory failed to obtain her medical records from Presbyterian Hospital. Additionally, the Plaintiff argues that Gregory ignored the findings of Dr. De la Torre, the critical intervention specialist. Finally, the Plaintiff notes that the Defendant argued throughout the administrative process that the Plaintiff suffered from an ordinary disease of life and did not sustain a compensable injury on November 2, 2007.

The summary judgment evidence shows that on November 7, 2007, five days after the robbery, the critical intervention specialist assigned to the Plaintiff by the Defendant determined that the Plaintiff experienced insomnia, intrusive memories, decreased appetite, exaggerated startling, hypervigilance, crying spells, concentration problems, and panic episodes marked by shortness of breath since the robbery. On November 15, 2007, Gregory was aware that the Plaintiff had sought treatment at the hospital on November 12, 2007. Although Gregory contacted the hospital in an

effort to obtain the Plaintiff's medical records, the hospital denied Gregory's request. Gregory made no further attempt to obtain the Plaintiff's medical records. Rather, on the same day, without conducting any further investigation, Gregory filed a Notice disputing the Plaintiff's entitlement to any medical benefits for any disability or impairment for non-occupational conditions, claiming that the Plaintiff was suffering from an ordinary disease of life.[3] Although the Defendant argues that it did not deny compensation for the Plaintiff's mental trauma injury, the summary judgment evidence can be seen to indicate otherwise. As noted above, the disputed issues presented to the hearing officer at the contested case hearing centered on whether the Plaintiff sustained a compensable mental trauma injury on or about November 2, 2007, the date of the robbery. Based on the foregoing, the court finds that questions of fact exist as to whether the Defendant breached its duty of good faith and fair dealing to the Plaintiff. As such, the Defendant's motion for summary judgment with respect to this issue is denied.

## 5. Damages

"In a claim against an insurer for the breach of the duty of good faith and fair dealing, a workers' compensation claimant may recover damages for injuries independent of the compensable injury." *England*, 2011 WL 5873002 at *10 (citations omitted). "An exacerbation of the original compensable injury, or an injury stemming directly therefrom, does not constitute a recoverable independent injury for the breach of the duty of good faith and fair dealing." *Id*. (citation omitted). "Rather, damages for such injuries are covered by the exclusivity provision of the [Texas Workers'

---

[3]It appears from Gregory's deposition testimony that after Gregory reviewed Dr. De la Torre's report, Gregory concluded that the Plaintiff's mental trauma stemmed from her husband's recent heart surgery and the death of her friend. It further appears that Gregory disregarded the impact of the robbery on the Plaintiff's mental condition. PL. RESP. TO DEF. MTN. FOR SUMMARY JUDGMENT, EXH. H, pp. 61-62.

Compensation Act], which provides that 'recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . [for] a *work-related injury* sustained by the employee.'" *Id*., quoting TEX. LAB. CODE § 408.001 (emphasis added) (remaining citation omitted).

The Defendant argues that the Plaintiff cannot sustain a claim for breach of the duty of good faith and fair dealing because she did not offer evidence of an injury independent of her compensable injury. *See England*, 2011 WL 5873002 at *10. In response, the Plaintiff offered evidence that as a direct result of the Defendant's conduct, she sustained independent injuries recoverable under common law, including damages to her credit reputation and mental anguish. *See id*. With respect to her credit reputation, the Plaintiff offered her credit report and well as evidence that she filed for bankruptcy. With respect to mental anguish, the Plaintiff claimed that because of the Defendant's conduct, she suffered severe anxiety and stress which has strained her relationships with her husband and grandchildren and caused her to experience difficulties in sleeping.

Based on the foregoing summary judgment evidence, the court finds that the Plaintiff's evidence is sufficient to raise a fact dispute with respect to the existence and extent of independent injuries sustained as a result of the Defendant's conduct. Accordingly, summary judgment on this basis is denied. *See id*. at *11.[4]

---

[4]In its motion for summary judgment, the Defendant argues that the Plaintiff cannot prevail on her breach of the duty of good faith and fair dealing claim. *See England*, 2011 WL 5873002 at *11 n.55. The motion, however, does not include an argument for summary judgment on the Plaintiff's claim for punitive damages for bad faith should the common law claim survive. *See id*. Because the Plaintiff's cause of action for breach of the duty of good faith and fair dealing survives summary judgment, the court finds that the Plaintiff's claim for punitive damages related to the same survives as well. *See id*.

## CONCLUSION

It is hereby **ORDERED** that the stay is lifted. It is further.

**ORDERED** that the Defendant's motion for summary judgment (docket entry #24) is hereby **GRANTED IN PART**. It is finally

**ORDERED** that in light of the court's decision herein, the parties shall mediate this case again by **MAY 18, 2012**. In the event the parties are unable to reach a settlement, the court hereby enters the following scheduling order:

(1) Two copies of the Joint Final Pretrial Order prepared in accordance with Local Rule CV-16(b) and Joint Proposed Jury Instructions and Verdict Form (or proposed Findings of Fact and Conclusions of Law in nonjury cases) shall be delivered by the plaintiff to the court by **JUNE 18, 2012**. In order to enable the plaintiff to prepare and deliver the Joint Final Pretrial Order and Joint Proposed Jury Instructions and Verdict Form (or proposed Findings of Fact and Conclusions of Law in nonjury cases) to the court, and to enable the defendants and any third parties to participate in the preparation of such documents, the plaintiff shall provide the plaintiff's share of the necessary information to all other parties by **JUNE 4, 2012**. Thereafter, all defendants and third parties shall provide their share of the information to plaintiff by **JUNE 11, 2012**.

(2) Any motions in limine shall be filed by **JUNE 1, 2012**. Responses to motions in limine shall be filed within the time provided by Local Rule CV-7.

(3) This case is set for a Final Pretrial Conference and Trial Scheduling on **JULY 2, 2012**.

IT IS SO ORDERED.

**SIGNED this the 5th day of April, 2012.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE